H. V. WATKINS and EUNICE W. WATKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Watkins v. Commissioner
Docket No. 7230-71.
United States Tax Court
T.C. Memo 1973-167; 1973 Tax Ct. Memo LEXIS 122; 32 T.C.M. (CCH) 809; T.C.M. (RIA) 73167; July 30, 1973, Filed David B. Grishman, for the petitioners. Jeffrey B. Talley, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the taxable years 1966 and 1967 in the amounts of $2,630.71 and $4,253.07, respectively. [1]
The sole issue for disposition is whether the sale in 1966 of petitioner H. V. Watkins' house located at 1236 Belvoir Place, Jackson, Mississippi, constituted a transaction 2 entered into for profit for purposes of authorizing the deductibility of the resultant loss under section 165(c) (2). [2]
*123 FINDINGS OF FACT Some of the facts have been stipulated; the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners H. V. Watkins and Eunice W. Watkins are husband and wife who resided in Madison, Mississippi, at the time the petition was filed in the instant case. Petitioners filed their joint Federal income tax returns for the taxable years 1966 and 1967 with the director, Internal Revenue Service Center, Chamblee, Georgia. Petitioner Eunice W. Watkins is a petitioner in the instant case solely by reason of having filed joint returns with her husband, H.V.Watkins; the latter will thus hereinafter be referred to as petitioner. On May 6, 1965, petitioner received as devisee under the Last Will and Testament of Frances T. Watkins, his first wife ("Frances"), fee simple title [3] to the residence located at 1236 Belvoir Place, Jackson, Mississippi ("the residence"). Prior to May 6, 1965, petitioner had occupied the residence with Frances as his personal residence for 11 years. Petitioner 3 continued to occupy the residence from May 6, 1965, until September 5, 1965. He never rented the residence and, in fact, never *124 offered the residence for rent. Prior to petitioner's inheritance of the residence his three children had been living elsewhere. Petitioner's children Bill and Vaughn, Jr. ("Vaughn") and Vaughn's wife, Mary, moved into the residence after petitioner inherited it, and Vaughn and his wife continued to occupy the residence until somethime in October. They were permitted to remain in the residence until October since their new house, which was then being constructed, was scheduled for occupancy in October. Petitioner did not ask either Bill or Vaughn to pay rent for their occupancy of the residence after May 6, 1965. Petitioner decided to marry petitioner Eunice W. Watkins in August 1965, and their marriage was solemnized on September 5, 1965. Petitioner arranged to buy another house in the latter part of August 1965, within two weeks after he decided to remarry. He listed the residence for sale in September 1965. Eunice also offered her prior residence for sale in the fall of 1965. Petitioner conclusively decided within *125 the first week after Frances' death to sell the residence. He sold the residence on May 11, 1966, for $57,500 and sustained a 4 long-term capital loss of $10,363.25 on the sale of the residence. Respondent in his notice of deficiency disallowed petitioner's claimed deduction of the $10,363.25 long-term capital loss resulting from the sale of the residence. ULTIMATE FINDINGS OF FACT Petitioner's decision to sell the residence was induced by a profit motivation.
The usage of the residence by petitioner and/or his children for the approximate six-month period of time subsequent to Frances' death was not sufficient to characterize the residence as petitioner's personal residence. OPINION It is clear that if petitioner had sold the residence, which had been used by petitioner and Frances as their personal residency, prior to Frances' death, the loss would not have been deductible, as the mere offering for sale of property used for personal purposes does not convert the subsequent sale of this property into a transaction entered into for profit under section 165(c) (2). See ; and . *126 On the other hand, it is also clear that property acquired by inheritance has a neutral status. See ; and . Thus, the fact that petitioner may have utilized the residence as his personal residency prior to his 5 acquisition of it by inheritance does not taint the purpose for which the residence is deemed to have been held subsequent to the time of inheritance. Accordingly, we must examine petitioner's state of mind and/or conduct subsequent to Frances' death to determine if he exercised a profit motive with respect to the sale of the residence. Respondent contends that petitioner sold the residence solely for personal motives and that he lacked the requisite profit motivation required by section 165(c) (2). Respondent supports this contention by reference to the fact that petitioner and some of his children lived in the residence for four months after Frances' death; that petitioner allowed some of his children to live rent free in the residence for two additional months after petitioner had moved out; that petitioner did not offer the residence for rent; and that petitioner did *127 not offer the residence for sale until after he had remarried. We are not persuaded by this contention. Petitioner testified at trial that he did not intend to make the residence his personal residency after Frances' death and that he, in fact, had decided approximately within one week after Frances' death to sell the house. This testimony was corroborated by petitioner's lawyer (who also 6 served as the administrator of Frances' estate) at the trial. Based on the testimony of these two witnesses we are persuaded that petitioner did not intend to make the residence his personal residency after decedent's death and that he had decided to sell the residence no later than one week after Frances' death. The usage of the residence by petitioner and/or some of his children during the six-month hiatus following Frances' death is not inconsistent with petitioner's conclusive intent to dispose of the residence. After having suffered a personal tragedy, it is reasonable that petitioner would take a nominal amount of time to determine how and when to dispose of the residence. If petitioner had continued to live in the residence for an unreasonably long period of time, we might *128 have been inclined to conclude that petitioner's conduct indicated an intent to make the residence his personal residency. However, the four-month occupation of the residency by petitioner is not such an unreasonably long period of time. In , the taxpayer occupied the inherited residence for almost one year after the death of her husband. This Court permitted taxpayer to deduct the loss resulting from the ultimate sale of the residence and stated: 7 The fact that the petitioner lived in the residence for a short time after her husband's death while she was completing necessary arrangements for making her home elsewhere does not show an intent to make this newly acquired property her home. * * * [] Similarly, we believe that petitioner's usage of the residence for four months, during which time he had decided to sell the residence, is not sufficient to convert the residence into petitioner's personal residency for purposes of section 165(c) (2). Moreover, in this context, petitioner's decision to allow Bill, Vaughn and Vaughn's wife (sometimes hereinafter referred to collectively *129 as his children) to continue to reside in the residence until the completion in October of the house being constructed by Vaughn and his wife does not alter our conclusion. His children moved into the residence shortly after Frances' death to ease petitioner's adjustment to his personal trauma. Petitioner subsequently made the requisite adjustment and moved out of the residence four months after Frances' death. The fact that petitioner permitted his children to continue occupation of the residence until October does not convert the residence into petitioner's personal residency. To the contrary, petitioner had already offered the residence for sale in September 1965. Petitioner's consent to allow his children to remain in the residence for a 8 limited period of time after the residence had been offered for sale merely reflects a response by petitioner to his children based on their having reacted to petitioner's needs during his period of crisis. If petitioner had not offered the residence for sale and had correlatively permitted his children to occupy the residence for an unreasonably long time, we might have concluded that petitioner did not have a profit motivation with *130 respect to the residence. The facts, however, do not reflect this variable. The limited period of time during which his children occupied the residence subsequent to petitioner having offered it for sale does not constitute such an unreasonably long period of time. Finally, the fact that petitioner did not offer the residence for rent and did not charge rent for usage by his children is not conclusive. The fact that inherited property is not offered for rent prior to sale does not preclude a determination that the sale constituted a transaction entered into for profit. See Similarly, we believe that the failure to charge rent to his children for their usage of the residence for the short period of time after petitioner moved out should not under the circumstances of the instant case negate petitioner's profit motive concerning the residence. 9 Accordingly, we have found, and so hold, that petitioner possessed the requisite profit motivation with respect to the residence; that petitioner's sale of the residence constituted a transaction entered into for profit; and that petitioner's long-term capital loss sustained upon the sale is deductible *131 under section 165(c) (2). Decision will be entered under Rule 50. Footnotes
1. Petitioners' petition has contested the correctness of only $772.70 and $1,503.93 of respondent's deficiency determinations for the respective taxable years. ↩
2. All sections references are to the Internal Revenue Code of 1954. ↩
3. The inference drawn from this record is that petitioner had no property interest, legal or equitable, in the residence prior to Frances' death. ↩